UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-19-B-W |
| | ) | |
| RUSSELL E. BOOKER | ) | |

**ORDER ON MOTION TO DISMISS INDICTMENT**

Convicted under Maine's generic assault statute, Russell Booker faces an indictment that charges him with possession of a firearm by a prohibited person. He seeks to have the indictment dismissed because the Maine assault statute does not contain the domestic status of the assault victim as an element of the offense and because the Maine assault statute contains reckless conduct as a potential *mens rea* element. The Court denies the Defendant's motion on the first issue, because his argument runs counter to clear First Circuit authority. It denies his motion on the second issue, because his position runs counter to clear congressional intent.

I.   STATEMENT OF FACTS

On January 16, 2008, a federal grand jury indicted Russell Booker on two counts for possessing firearms after having been convicted of a misdemeanor crime of domestic violence, a violation of 18 U.S.C. § 922(g)(9). *Indictment* (Docket # 1). The Indictment alleges that Mr. Booker was convicted on March 4, 1998 in Somerset County Superior Court for the state of Maine of assault in *State v. Booker*, No. 98-272 (Me. Dist. Ct., Skowhegan, Mar. 4, 1998). Count One alleges that Mr. Booker possessed a Remington rifle on November 28, 2007 and December 13, 2007; Count Two alleges that he possessed two shotguns and a Browning rifle on December 13, 2007. *Id.*

On February 7, 2008, Mr. Booker moved to dismiss the indictment on the ground that discovery revealed a failure of proof as to an essential element.[1] *Def.'s Mot. to Dismiss Indictment as Disc. Indicates a Failure of Proof as to an Essential Element of the Crimes Charged* (Docket # 11) (*Def.'s Mot.*). The Government responded on February 28, 2008. *Resp. of the United States to Def.'s Mot. to Dismiss Indictment* (Docket # 23) (*Govt's Resp.*). Mr. Booker replied on March 10, 2008. *Reply to Gov't Resp. to Dismiss Indictment for Failure of Proof* (Docket # 28) (*Def.'s Reply*).

## II. DISCUSSION

### A. Whether the Prior Conviction Can be a Predicate Conviction Even Though the State Statute Does Not Contain as an Element a Domestic Relationship Between the Perpetrator and the Victim

Mr. Booker raises a question that he says has "dogged the Circuit Courts of Appeal and on which they still are in conflict." *Def.'s Mot.* at 2. The "issue is whether the statute under which a prior conviction was obtained must have, as an element, the domestic relationship between the victim and the person convicted of the misdemeanor offense." *Id.* Until February 1, 2008, the state of Maine did not have in effect a separate statute criminalizing domestic assault. *See* 17-A M.R.S.A. § 207; 17-A M.R.S.A. § 207-A (effective February 1, 2008). Thus, when Mr. Booker was convicted of assault on March 4, 1998, the Maine assault statute did not contain as an element of proof a domestic relationship between the defendant and the victim.[2]

Federal law prohibits the possession of a firearm by a person "who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). The law defines a "misdemeanor crime of domestic violence" as a misdemeanor that:

---

[1] Mr. Booker also moves to dismiss by reason of entrapment by estoppel; the Government seeks to exclude this defense in a separate motion *in limine* at Docket # 13. The Court will address this issue in a separate Order.

[2] The Maine assault statute requires the state to prove that the defendant "intentionally, knowingly or recklessly cause[d] bodily injury or offensive physical contact to another person." 17-A M.R.S.A. § 207(1)(A). A violation of this subsection of the statute is a Class D crime, a misdemeanor. *Id.*

> has, as an element, the use or attempted use of physical force . . . committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(33)(A)(ii). Mr. Booker says that as the Maine statute fails to require proof of a domestic relationship, a violation of the Maine misdemeanor assault statute does not constitute a predicate offense for purposes of § 922(g)(9).

Mr. Booker acknowledges that the law in this Circuit is against him. *Def.'s Mot.* at 3 (stating "Mr. Booker raises this issue to preserve it should the Supreme Court address this conflict within the Circuits regarding the interpretation of the relevant statute"). He is right. In *United States v. Meade*, the First Circuit addressed this issue and ruled that "only the mode of aggression, not the relationship between perpetrator and victim, must appear within the formal definition of an antecedent misdemeanor to constitute it as a predicate offense." 175 F.3d 215, 218-19 (1st Cir. 1999). As *Meade* observed, "it is, after all, fair to presume that a misdemeanant will know his relationship with his victim." *Id.* at 222.

Within the First Circuit, *Meade* remains good and binding law. *See Eulitt v. Maine Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004) (stating that "[u]ntil a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority"); *Gately v. Mass.*, 2 F.3d 1221, 1226 (1st Cir. 1993). The rare and narrow circumstances in which a district court should strike out on its own in the face of First Circuit precedent are not present here. *See Eulitt v. Maine Dep't of Educ.*, 307 F. Supp. 2d 158, 161 (D. Me. 2004).

### B. Mr. Booker's Prior Conviction and the Definition of a "Misdemeanor Crime of Violence"

#### 1. Introduction: *Mens Rea* under the Maine Assault Statute and the Definition of "Misdemeanor Crime of Domestic Violence"

Next, focusing on the *mens rea* requirements of the Maine assault statute, Mr. Booker argues that the elements of the Maine statute do not meet the predicate requirements for a misdemeanor crime of domestic violence because the statute includes assaults that are carried out "recklessly." 17-A M.R.S.A. § 207(1)(A). This is a serious and complicated issue. The Maine assault statute under which Mr. Booker was convicted criminalizes "intentionally, knowingly or recklessly caus[ing] bodily injury or offensive physical contact to another person." *Id.*; *State v. Patterson*, 2005 ME 55, ¶ 8, 881 A.2d 649, 651 (stating that "recklessness is the minimum required mens rea requirement for assault pursuant to 17-A M.R.S.A. § 207(1)(A)").

Maine law defines "reckless" as when a person "consciously disregards a risk that the person's conduct will cause such a result" or, as regards attendant circumstances, when the person "consciously disregards a risk that such circumstances exist." 17-A M.R.S.A. § 35(3)(A), (B). The law further states that "the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." *Id.* § 35(3)(C). As a culpable state of mind, recklessness falls between the higher standard of "knowingly" ("the person is aware that it is practically certain that the person's conduct will cause such a result") and "criminal negligence" ("the person fails to be aware of a risk that the person's conduct will cause such a result"). *Id.* § 35(2), (4).

Federal criminal law prohibits possession of a firearm by a person who has been convicted of a misdemeanor crime of domestic violence. 18 U.S.C. § 922(g)(9). The law

contains three requirements: first, that the crime is a misdemeanor under Federal, State, or Tribal law; second, that it is a crime of domestic violence which "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon"; and third, that it is a crime for which the victim and the perpetrator have a particular relationship. 18 U.S.C. § 921(33).

Mr. Booker examines the federal definition of "misdemeanor crime of domestic violence" and extracts the phrase "has, as an element, the use or attempted use of physical force." *Id.* He says that a United States Supreme Court case, *Leocal v. Ashcroft*, 543 U.S. 1 (2004), stands for the proposition that this language "use or attempted use of physical force" requires intentional behavior. Since Mr. Booker may have been merely reckless when he assaulted his wife, he argues that the state of Maine conviction does not fit the definition of misdemeanor crime of domestic assault under federal law. Without a predicate offense, he reasons, the indictment must be dismissed.

### 2. *Leocal*

In *Leocal*, the Supreme Court addressed whether driving under the influence is a crime of violence. *Leocal*, 543 U.S. at 3-4. Mr. Leocal, a Haitian citizen and lawful permanent resident of the United States, had been convicted of driving under the influence and causing serious bodily injury, a violation of Florida state law. *Id.* at 3. While he was serving his sentence, the Immigration and Naturalization Service initiated removal proceedings, claiming that he had committed an aggravated felony and was deportable. *Id.* Section 101(a)(43) of title 8 defines an aggravated felony to include a crime of violence as defined in section 16 of title 18:

> (a) An offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

5

>  (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. *Leocal* observed:

> While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would 'use . . . physical force against' another when pushing him; however, we would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him.

*Leocal*, 543 U.S. at 9 (emphasis in original). *Leocal* concluded that "[t]he key phrase in § 16(a) – the 'use . . . of physical force against the person or property of another' – most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Id.*

In arriving at this conclusion, the Supreme Court noted that it was attempting to determine the meaning of "crime of violence," which, under the "ordinary meaning of the term," combined with "§ 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses." *Id.* at 11. Moreover, stressing a point that carried "significant weight," *Leocal* discussed Congress's use of the term "crime of violence" in the Immigration and Naturalization Act (INA). *Id.* at 11-12. The INA elsewhere defined a "serious criminal offense" to include a "crime of violence" and "any crime . . . of driving under the influence of alcohol . . . if such crime involves personal injury to another." *Id.* at 12 (quoting 8 U.S.C. § 1101(h)). *Leocal* found that Congress's separate listing of the crime of driving under the influence causing injury to be "revealing." *Id.* at 12. Finally, *Leocal* was careful to emphasize that it was not presented "with the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16." *Id.* at 13.

### 3. The *Taylor* Analysis

In 1990, the United States Supreme Court issued *Taylor*, which set out a two-tiered analysis for determining whether a prior conviction fits within the Armed Career Criminal Act (ACCA). *Taylor v. United States*, 495 U.S. 575, 595 (1990); *see also Shepard v. United States*, 544 U.S. 13, 26 (2005) (applying *Taylor*). The two-step categorical approach requires the court first to review the statutory elements of the underlying crime and compare them to the elements of a qualifying crime under the ACCA. *United States v. Cadieux*, 500 F.3d 37, 42-43 (1st Cir. 2007). If it does, the "inquiry ends and the prior conviction may be used as an ACCA predicate." *United States v. Miller*, 478 F.3d 48, 50 (1st Cir. 2007). If the "underlying statute sweeps more broadly and defines [the crime in question] in terms that encompass but exceed the parameters of the [qualifying] definition, the court must move to the second step of the *Taylor* parvane in order to determine if the particular conviction actually embodied every element of a violent felony." *Id.* at 51 (internal punctuation omitted). In doing so, the court must "restrict its inquiry to documents within the carapace of the record of conviction, such as the charging documents, the terms of the plea agreement or transcript of the colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information." *Id.* (internal punctuation and citation omitted).

To determine if a person has been convicted of a crime of violence within the meaning of 18 U.S.C. § 16, the law requires a similarly categorical approach, looking "only to the fact of conviction and the statutory definition of the offense, not the person's actual conduct." *Oyebanji v. Gonzales*, 418 F.3d 260, 262 (3d Cir. 2005) (Alito, J.); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1124-25 (9th Cir. 2006) (en banc). This same methodology would appear to apply with

equal force to determine if a person has been convicted of a misdemeanor crime of domestic violence within the meaning of 18 U.S.C. § 921(33).

### 4. *Leocal* and Case Law in Other Circuits

Mr. Booker seeks to take the next step with *Leocal* and apply it to the state of Maine assault statute that uses recklessness as a possible element of the offense. Mr. Booker argues that "[i]n *Leocal*, the Supreme Court interpreted this *exact same language*, albeit as it occurs in 18 U.S.C. § 16 (Crime of Violence) and found that crimes which do not have any intent element, or which can be committed through negligence, do not meet the definition of 'use' as provided by Congress."[3] *Def.'s Mot.* at 5.

Mr. Booker draws support from several circuits that have held that recklessness does not meet the § 16 requirement discussed in *Leocal*.[4] *United States v. Torres-Villalobos*, 487 F.3d 607, 616-17 (8th Cir. 2007) (overturning earlier precedent and finding that involuntary manslaughter, which can be committed "recklessly" does not meet the standard set out in § 16(b)); *Fernandez-Ruiz*, 466 F.3d at 1130 (holding that "the reckless use of force is 'accidental' and crimes of recklessness cannot be crimes of violence [under § 16(b)]"); *United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006) (holding "that a crime requiring only recklessness does not qualify as a 'crime of violence' under 18 U.S.C. § 16"); *Oyebanji*, 418 F.3d 260, 264

---

[3] Some courts have found that sections 16(a) and 921(1)(33)(A) are analogous. *Hernandez v. United States Att'y Gen.*, 513 F.3d 1336, 1340 (11th Cir. 2008) (stating that 18 U.S.C. § 921(a)(33)(A) contains "essentially the same definition of a 'crime of violence' as in 18 U.S.C. § 16(a)" and applying analysis regarding § 921 to a case concerning § 16(a)); *U.S. v. Nobriga*, 474 F.3d 561, 565 (9th Cir. 2006) (collecting cases and holding that because recklessness does not meet the *mens rea* requirement under § 16 it also does not meet the § 921(a)(33)(A) standard).

[4] Some of these cases concerning whether reckless behavior meets the § 16 and *Leocal* standards consider 18 U.S.C. § 16(b), which states that a "crime of violence" is "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Of course, this standard varies dramatically from the § 16(a) standard regarding "the use . . . of physical force." *Id.* § 16(a). The Supreme Court has enunciated that "[s]ection 16(b) sweeps more broadly than § 16(a) . . . but does not thereby encompass all negligent misconduct." *Leocal*, 543 U.S. at 10. Because 16(b) is broader than 16(a), if a court finds that a reckless crime does not meet the 16(b) standard, then it certainly does not meet the 16(a) standard. Thus, since § 16(a) is more restrictive than § 16(b), if a court has found that reckless criminal behavior does not meet the § 16(b) standard, that same behavior will also also fail to meet the § 16(a) standard.

(stating that the court "[could not] overlook the [*Leocal*] Court's repeated statement that 'accidental' conduct (which would seem to include reckless conduct) is not enough to qualify as a crime of violence"); *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 449 (4th Cir. 2005) ("The conclusion of the *Leocal* Court that '[i]n no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing injury,' [543 U.S. at 11], strongly indicates that the result in *Leocal* would have been the same even had a violation of the statute there at issue required recklessness rather than mere negligence."); *Jobson v. Ashcroft*, 326 F.3d 367, 373-74 (2nd Cir. 2003) (regarding § 16(b), stating that "an unintentional accident caused by recklessness cannot properly be said to involve a substantial risk that a defendant will use physical force"). *But see United States v. Zunie*, 444 F.3d 1230, 1235 n.2 (10th Cir. 2006) (holding that conviction for "assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6)[, which] requires proof that a person acted with purpose, knowledge, or recklessness," meets the *mens rea* standard for § 16(a)).

### 5. First Circuit Law Before and After *Leocal*

In response, the Government contends that the First Circuit has considered a related question, and found that "offensive physical conduct" under the Maine statute meets the "physical force" requirement of § 921(g). *Govt's Resp.* at 4-5; *United States v. Nason*, 269 F.3d 10 (1st Cir. 2001); *United States v. Nason*, No. 00-CR-37-B-S, 2001 U.S. Dist. LEXIS 17680 (D. Me. Feb. 13, 2001). Both cases were decided before *Leocal*. Mr. Booker counters that "[a]lthough the Court found that 'offensive physical contact' was sufficient to satisfy, as a matter of law, the *mode* of aggression, nowhere in the opinion does the Court address the *level of intent* inherent in the 'mode of aggression.'" *Def.'s Reply* at 2. The Defendant is correct that *Nason*

does not focus on whether a "reckless" *mens rea* meets the "use or attempted use of physical force" requirement, although it does approve of counting a conviction under the Maine law at issue here as crime of domestic violence under § 921(g). *Nason*, 269 F.3d at 21. *See also United States v. Duval*, 496 F.3d 64, 84 (1st Cir. 2007) (relying on *Nason*).[5]

### 6. Interpreting 28 U.S.C. §§ 921(33) & 922(g)(9), the Maine Assault Statute, and *Leocal*

#### a. Statutory Construction & *Leocal*

Statutory analysis "begins with the language of the statute." *Leocal*, 543 U.S. at 8. The language in § 921(33) – "has as an element the use, attempted use, or threatened use of physical force against the person of another" – is identical to the language of § 16(a) and *Leocal* teaches that this language "suggests a higher degree of intent than negligent or merely accidental conduct." *Id.* at 9. *Leocal* itself provides a constrictive starting point for this analysis. The Supreme Court in *Leocal* stated that it had not been presented with "the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16." *Id.* at 13. In fact, as *Leocal* described it, "[t]he key phrase in § 16(a) – the 'use . . . of physical force against the person or property of another' – most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Id.* at 9. To act recklessly under Maine law is to act with a "higher degree of intent than negligent or merely accidental conduct." *Id.* Therefore, *Leocal* does not directly answer the question this motion raises.

Courts analyzing *Leocal* also provide some guidance. It is true that in *Oyebanji*, then-Judge Alito expressed the prevailing view that *Leocal* distinguished between intentional and

---

[5] After *Leocal*, the First Circuit ruled that a Rhode Island law defining assault as "an unlawful attempt or offer, with *force or violence,* to do a *corporal hurt* to another, whether from malice or wantonness," meets the Supreme Court's standard. *Lopes v. Keisler*, 505 F.3d 58, 63 (1st Cir. 2007) (quoting *State v. McLaughlin,* 621 A.2d 170, 177 (R.I. 1993)) (emphasis in *Lopes*).

accidental conduct and that reckless conduct seems accidental. *Oyebanji*, 418 F.3d at 264. A countervailing interpretation, set forth in the *Fernandez-Ruiz* dissent, is that *Leocal* distinguished between the "active employment of force" and merely accidental or negligent actions. *Fernandez-Ruiz*, 466 F.3d at 1141 (Wardlaw, J., dissenting). The *Fernandez-Ruiz* dissent observed that recklessness occurs when a person "consciously disregards" a risk, which contains a level of volition above negligent or accidental conduct. *Id.* In assessing recklessness along the volitional scale, the dissent in *Fernandez-Ruiz* concluded that recklessness "lies closer to intentionality than to negligence." *Id.* at 1141-42. Here, the Court concludes that the better statutory argument rests with the *Fernandez-Ruiz* dissent.

In addition, considering the state statute, Maine's definition of "recklessly" is identical to some, but not all, definitions of "recklessly." *Compare Oyebanji*, 418 F.3d at 263 n.4 (considering a New Jersey law similar to the Maine statute); *with Fernandez-Ruiz*, 466 F.3d at 1130 (noting that that the Arizona definition of reckless includes not only consciously disregarding a substantial and known risk, but also being unaware of such risk solely by reason of voluntary intoxication); *Bejarano-Urrutia*, 413 F.3d at 449 (noting that the Virginia definition of voluntary manslaughter requires proof that the defendant engaged in "acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard for the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with knowledge of, the probable result of his acts").

Finally, in the *Leocal* statutory analysis, the Supreme Court discussed a separate statutory provision, which differentiated DUI from crimes of violence, and stated that its separate treatment carried "significant weight in the particular context of this case." 543 U.S. at 12 n.9.

By contrast, here, there is no separate federal statutory provision that suggests Congress has elsewhere distinguished between a knowing or intentional domestic assault and a reckless one. *See Leocal*, 543 U.S. at 11-12.  In Maine and elsewhere, there is no such treatment of assault in the context of domestic violence.

### b. Congressional Intent

To parse the statutory language without regard to its context becomes an academic exercise, but one with real life consequences.  In *Leocal*, the Supreme Court was influenced by Congress's desire to differentiate between crimes that justify deportation and those that do not; the Court explained that in limiting the category of deportable crimes to "crimes of violence," Congress did not naturally include driving under the influence.  *Leocal*, 543 U.S. at 11-12.

Applying the same analysis, there is a striking contrast between the clarity of the congressional intent driving the deportation statute in *Leocal* and the firearm possession restrictions for those who commit acts of domestic violence.  Unlike the questionable proposition that Congress intended to capture DUI as a crime of violence under § 16, there can be no mistake about the congressional determination to keep firearms from those who commit domestic assaults.  There is no evidence that Congress intended to keep firearms out of the hands of only those individuals who *intentionally* or *knowingly* assault their domestic partners, but not those who *recklessly* do so.  *See United States v. Hartsock*, 347 F.3d 1, 4-5 (1st Cir. 2003) (stating that the purpose of § 922(g)(9) was to "remedy the disparate treatment between those convicted of a felony involving domestic assault and those convicted of a misdemeanor involving domestic assault") (quoting *United States v. Meade*, 986 F. Supp. 66, 68 (D. Mass. 1997)).  It is one thing to say that someone who recklessly drives under the influence should not be removed from this

12

Country.  It is an altogether different matter to say that someone who recklessly assaults a domestic partner may possess a gun.

The legislative history is crystal clear.  Section 922(g)(9) is also known as the Lautenberg Amendment to the Gun Control Act of 1968, which passed in 1996 as part of the Omnibus Consolidated Appropriations Act of 1997.  *Id.* at 4.  Congress "established with the Lautenberg Amendment a policy of 'zero tolerance when it comes to guns and domestic violence.'" *Id.* at 5 (quoting statement of Sen. Lautenberg, 142 Cong. Rec. S8831 (daily ed. July 25, 1996)).  As the First Circuit noted:

> Observing that "nearly 65 percent of all murder victims known to have been killed by intimates were shot to death," 142 Cong. Rec. S10379 (daily ed. Sept. 12, 1996) (statement of Sen. Murray), Congress hoped that closing this loophole would help to reduce the 150,000 instances of household violence involving firearms that are reported each year. 142 Cong. Rec. S8831 (daily ed. July 25, 1996) (statement of Sen. Lautenberg).

*Id.*

The practical implications of the Defendant's position on federal firearms possession law in the state of Maine are profound and disturbing.  Unrelated branches of judicial decision-making, including *Taylor* and *Leocal*, combine to cast doubt on the continued viability of nearly every state of Maine assault conviction as a predicate for the federal crime of possession by a prohibited person.[6]  This is true because *Taylor* limits what the court may consider in determining whether a particular conviction is an appropriate predicate.  If the Maine statute is deemed broader than the federal predicate statute, courts will be required to turn to whatever *Taylor* documents are available within the Maine state court system to attempt to demonstrate whether the defendant acted knowingly, intentionally, or recklessly when the assault occurred.  It

---

[6] The new Maine domestic violence assault statute would not be immune from attack under *Leocal*.  The newly-effective Maine statute addresses the question of whether the assault was a domestic assault, but it imports § 207's *mens rea* requirements, including recklessly, into its provisions.  17-A M.R.S.A. § 207-A(1) ("A person is guilty of domestic violence assault if [t]he person violates section 207 . . . .") (internal subheading omitted).

is questionable whether in the busy Maine district court system, where domestic assaults are commonly resolved, *Taylor* documents even exist, especially since the distinction among the degrees of culpability that may be so critical for federal purposes is of no moment for state purposes.

Currently, in § 922(g)(9) trials involving prior convictions under a generic assault statute, the prosecutor typically offers proof – usually the testimony of the victim – that the assault was in fact a domestic assault. However, here, even if the evidence were irrefutable that the defendant committed a knowing and intentional domestic assault, this evidence would not be admissible under *Taylor* constraints, and an absence of the particular type of proof that *Taylor* requires would mean that the state assault conviction could not serve as a predicate conviction, thus voiding the federal firearms charge. This result would cast a long legal shadow over federal firearm possession prosecutions based on convictions under the Maine assault statute. The ultimate impact could be that, despite manifest evidence of congressional intent to the contrary, countless individuals, many of whom in fact committed knowing and intentional domestic assaults and are precisely the people Congress intended to prohibit from gun possession, would be immune from federal firearms prosecution. Since the instances where *Taylor* proof would be available would be rare, prosecutions even of clear violations of federal firearms possession law in domestic assault cases would become the exception, not the rule, and the repercussions of such a decision would fall hard upon the victims of domestic violence.

This sea change in federal criminal law would be the inescapable consequence of the rigorous application of statutory construction without a scintilla of evidence that such a result would be consistent with congressional intent, without any congressional action to amend a statute that has resulted in countless prosecutions, convictions, sentences, and appeals, and in the

face of consistent and well-documented expressions of a congressional directive to take guns from the hands of people who commit domestic assaults.

Finally, to the extent the First Circuit has spoken on this issue, it has consistently held that a conviction under a generic state assault statute, where the Government has proven that the assault was committed against one of the individuals listed in § 921(33) qualifies as a predicate offense for a violation of § 922(g)(9).  This was the First Circuit's position before *Leocal*. *Nason*, 269 F.3d at 21; *United States v. Denis*, 297 F.3d 25, 31 n.3 (1st Cir. 2002).  It has remained the First Circuit's position since *Leocal*. *Duval*, 469 F.3d at 84-85; *Lopes*, 505 F.3d at 63 (addressing a *Leocal* challenge to the Rhode Island assault statute).  Unless and until directed otherwise, the Court will continue to apply First Circuit precedent.  *Eulitt*, 307 F. Supp. 2d at 161.

### III.   CONCLUSION

The Court <u>DENIES</u> Mr. Booker's Motion to Dismiss Indictment as Discovery Indicates a Failure of Proof as to an Essential Element of the Crimes Charged (Docket # 11) but reserves ruling on the entrapment by estoppel defense.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of May, 2008