UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-19-B-W |
| | ) | |
| RUSSELL E. BOOKER | ) | |

**ORDER ON DEFENDANT'S MOTION TO RECONSIDER ORDER DENYING MOTION TO DISMISS INDICTMENT AS THE STATUTE CHARGED VIOLATED THE SECOND AMENDMENT**

After the Supreme Court's decision in *District of Columbia v. Heller*, the Court concludes that the law prohibiting persons who have been convicted of a misdemeanor crime of domestic violence survives Second Amendment scrutiny.[1]

**I.     STATEMENT OF FACTS**

On January 16, 2008, a federal grand jury indicted Russell E. Booker for two counts of possession of a firearm by a person previously convicted of a misdemeanor crime of domestic violence, a violation of 18 U.S.C. § 922(g)(9). *Indictment* (Docket # 1). On March 28, 2008, Mr. Booker moved to dismiss the indictment, claiming that the statute under which he was charged violated the Second Amendment. *Mot. to Dismiss Indictment as the Statute Charged was Enacted in Violation of the United States Constitution* (Docket # 36) (*Def.'s Mot.*). On June 6, 2008, the Court denied the motion on stare decisis grounds, noting that binding precedent established that the Second Amendment conferred a collective, not an individual right to bear arms. *Order on Third Mot. to Dismiss Indictment* (Docket # 54). On June 26, 2008, the United States Supreme Court decided the seminal case of *District of Columbia v. Heller* in which the Court concluded that the Second Amendment guarantees "the individual right to possess and

---

[1] *District of Columbia v. Heller*, 554 U.S.__, 128 S. Ct. 2783 (2008).

carry weapons in case of confrontation." *Heller*, 128 S. Ct. at 2797.  On June 27, 2008, Mr. Booker moved for reconsideration of his motion in light of *Heller*.  *Mot. to Reconsider Order Denying Mot. to Dismiss Indictment as the Statute Charged Violates the Second Amendment* (Docket # 57) (*Mot. to Rec.*).

## II.   DISCUSSION

*Heller* requires a different path to the same result.  Prior case law suggested that the Second Amendment did not encompass an individual right to bear arms and, therefore, the statutory restriction on Mr. Booker's possession of firearms did not implicate a constitutional right.  *Heller*, however, clarified that the Second Amendment does guarantee an individual right to bear arms and, as 18 U.S.C. § 922(g)(9) restricts that right, *Heller* requires that the Court determine whether this statutory restriction passes constitutional muster.

*Heller* left unanswered a significant question:  The level of scrutiny the Court must apply to the restriction on Mr. Booker's individual right to bear arms.  As *Heller* notes, the "traditionally expressed levels" are "strict scrutiny, intermediate scrutiny, and rational basis." *Heller*, 128 S. Ct. at 2821.  The *Heller* majority acknowledged that it did not establish "a level of scrutiny for evaluating Second Amendment restrictions," but it left some hints.  *Id.*  First, the *Heller* majority rejected Justice Breyer's "interest-balancing" approach, observing that it knew "no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach." *Id.*  Second, the majority conceded that the District of Columbia law would pass rational-basis scrutiny and, since it ruled the District's complete ban on handguns unconstitutional, the necessary implication is that the rational-basis test is not applicable. *Id.* at 2818 n.27.  The remaining options are strict and intermediate scrutiny.

Strict scrutiny is generally reserved for statutory restrictions that affect the exercise of certain "fundamental right[s]." *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988). The individual right to bear arms might well be a fundamental right, the restriction of which requires strict scrutiny. This conclusion is supported by the placement of Second Amendment within the Bill of Rights alongside this Country's most precious freedoms. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (noting that "[e]ducation, of course, is not among the rights afforded explicit protection under our Federal Constitution."). However, as Justice Breyer points out, *Heller* expressly approves some statutory restrictions – the types of people who may exercise this freedom; the places where this freedom may be exercised; and, the ability to buy and sell the objects of this freedom – "whose constitutionality under a strict scrutiny standard would be far from clear." *Heller*, 128 S. Ct. at 2851. "Intermediate scrutiny is used, for discrimination based on gender and for discrimination against nonmarital children." Erwin Chemerinsky, *Constitutional Law Principles and Policies* at 645 (2nd Ed. 2002). *Heller* itself concedes that it does not "clarify the entire field." *Heller*, 128 S. Ct. at 2821. It consciously left the appropriate level of scrutiny for another day. *Id.* (stating that "there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us.").

Rather than tackle this complex and unanswered question, the Court starts from a different place. *Heller* teaches that even though the Second Amendment guarantees an individual right to bear arms, it is "not unlimited." *Id.* at 2816. *Heller* states that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the

commercial sale of arms." *Id.* at 2816-17. A useful approach is to ask whether a statutory prohibition against the possession of firearms by felons and the mentally ill is similar enough to the statutory prohibition against the possession of firearms by persons convicted of the misdemeanor crime of domestic violence to justify its inclusion in the list of "longstanding prohibitions" that survive Second Amendment scrutiny.

The Court concludes it does. To reach this conclusion, the Court starts by comparing the constitutionally-sanctioned prohibition against firearm possession by felons with the prohibition against persons convicted of misdemeanor crimes of domestic violence. A person can, of course, be convicted of a felony which had nothing to do with physical violence and which would not necessarily predict future misuse of a firearm. Nevertheless, the law forbids any convicted felon, regardless of the nature of the felony, from possessing firearms and *Heller* constitutionally sanctioned this broad prohibition.[2] *See* 18 U.S.C. § 922(g)(1) (stating "[i]t shall be unlawful for any person (1) who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm").

By contrast, the predicate offense under which Mr. Booker was convicted is defined in 18 U.S.C. § 922(g)(9) as requiring "the use or attempted use of physical force" by someone who is a spouse, parent, or guardian of the victim or someone in a position similar to a spouse, parent, or

---

[2] The same point is generally applicable to the mentally ill. Under § 922(g)(4), the law prohibits firearm possession by anyone "who has been adjudicated as a mental defective and who has been committed to a mental institution." 18 U.S.C. § 922(g)(4). In *Dickerson.*, the Supreme Court stated Congress's intent in enacting § 922(g) was "to keep firearms out of the hands of presumptively risky people." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n.6 (1983); *United States v. Holt*, 464 F.3d 101, 103-04 (1st Cir. 2006). *Heller* obviated the question of whether such a presumption restricting an individual's right to possess firearms would pass constitutional muster.
  *Holt* points out that there is a statutory provision that ameliorates the harshness of the statute's prohibitions by allowing a person under one of the statutory disabilities to petition the Attorney General to restore the right to possess a firearm. 18 U.S.C. § 925(c); *Holt*, 464 F.3d at 103-04. On the other hand, Congress has prohibited the use of appropriated funds for investigating and acting on such petitions since 1992. *Pickering-George v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, Civ. No. 07-8999 (RJL), 2008 U.S. Dist. LEXIS 12938, at *2 (D.D.C. Feb. 21, 2008); *Black v. Snow*, 272 F. Supp. 2d 21, 22 (D.D.C. 2003).

guardian of the victim.[3]  18 U.S.C. § 921(33)(A)(ii); *see United States v. Nason*, 269 F.3d 10, 16 (1st Cir. 2001) (stating that "physical force may be characterized as power, violence, or pressure directed against another person's body"); *Order on Mot. to Dismiss Indictment* at 2-3 (Docket # 52) (*Order*).  If anything, as a predictor of firearm misuse, the definitional net cast by § 922(g)(9) is tighter than the net cast by § 922(g)(1).  Turning to the governmental interest, the manifest need to protect the victims of domestic violence and to keep guns from the hands of the people who perpetrate such acts is well-documented and requires no further elaboration.  *See Order* at 12-15.

Based on the absence of a meaningful distinction between felons and persons convicted of crimes of domestic violence as predictors of firearm violence, the critical nature of the governmental interest, and the definitional tailoring of the statute, the Court concludes that persons who have been convicted of a misdemeanor crime of domestic violence must be added to the list of "felons and the mentally ill" against whom the "longstanding prohibitions on the possession of firearms" survive Second Amendment scrutiny.  *Heller*, 128 S. Ct. at 2816-17.

### III. CONCLUSION

The Court DENIES the Defendant's Motion to Reconsider Order Denying Motion to Dismiss Indictment as the Statute Charged Violates the Second Amendment (Docket # 57).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of August, 2008

---

[3] Mr. Booker emphasizes that an individual may be convicted of a misdemeanor crime of domestic violence in Maine by reckless behavior; he argues that there is not a significant enough government interest to deprive him of his Second Amendment right if he acted only recklessly. *Mot. to Rec.*  However, the felony convictions to which Mr. Booker's predicate offence is being compared run the gamut of the *mens rea* spectrum, and a domestic violence offender's *mens rea* does not impact the Court's analysis under *Heller*.